*1337 LINN, Circuit Judge,
dissenting, with whom Circuit Judges DYK, PROST, and O’MALLEY join.
I. Introduction
In its opinion today, this court assumes the mantle of policy maker. It has decided that the plain text of § 271(a) and (b) fails to accord patentees certain extended rights that a majority of this court’s judges would prefer that the statute covered. To correct this situation, the majority effectively rewrites these sections, telling us that the term “infringement” was not, as was previously thought, defined by Congress in § 271(a), but instead can mean different things in different contexts.
The majority’s approach is contrary to both the Patent Act and to the Supreme Court’s longstanding precedent that “if there is no direct infringement of a patent there can be no contributory infringement.” Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 341, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961); Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 526, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972) (quoting Mercoid Corp. v. Mid-Continent Co. (Mercoid I), 320 U.S. 661, 677, 64 S.Ct. 268, 88 L.Ed. 376 (1944) (Frankfurter, J., dissenting on other grounds)); see also Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 774 (Fed.Cir.1993) (“Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement.”); C.R. Bard v. Advanced Cardiovascular Sys., Inc., 911 F.2d 670, 673 (Fed.Cir.1990) (same). In 1952, Congress removed joint-actor patent infringement liability from the discretion of the courts, defining “infringement” in § 271(a) and expressly defining the only situations in which a party could be liable for something less than an infringement in § 271(b) and (c) — clearing away the morass of multi-actor infringement theories that were the unpredictable creature of common law. Since that time, Congress has on three occasions made policy choices to treat certain special circumstances as tantamount to “infringement.” See 35 U.S.C. § 271(e)(2), (f), and (g). In doing so, Congress did not give the courts blanket authority to take it upon themselves to make further policy choices or define “infringement.”
The majority opinion is rooted in its conception of what Congress ought to have done rather than what it did. It is also an abdication of this court’s obligation to interpret Congressional policy rather than alter it. When this court convenes en banc, it frees itself of the obligation to follow its own prior precedential decisions. But it is beyond our power to rewrite Congress’s laws. Similarly, we are obliged to follow the pronouncements of the Supreme Court concerning the proper interpretation of those acts. Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-313, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994); Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).
On this unsound foundation, the majority holds that in the present appeals there has been predicate “infringement” even though § 271(a)’s requirements are not satisfied. On that basis, the majority vacates the contrary judgments of the district courts and remands for further proceedings concerning liability under § 271(b). In my view, the plain language of the statute and the unambiguous holdings of the Supreme Court militate for adoption en banc of the prior decisions of the court in BMC Resources, Inc. v. Paymentech, L.P., 498 F.3d 1373, 1378-79 (Fed.Cir.2007) and Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318, 1329 (Fed.Cir.2008), which hold that liability under § 271(b) requires the existence of an act of direct infringement under § 271(a), mean *1338 ing that all steps of a claimed method be practiced, alone or vicariously, by a single entity or joint enterprise. For these reasons, I respectfully dissent.
II. Discussion
A. Direct Infringement Liability is a Sine Qua Non of Indirect Infringement Liability
The majority essentially skirts the en banc question in the Akamai case by holding that “[b]ecause the reasoning of our decision today is not predicated on the doctrine of direct infringement, we have no occasion at this time to revisit any of those principles regarding the law of divided infringement as it applies to liability for direct infringement under 35 U.S.C. § 271(a).” Maj. Op. 1307. With all due respect to my colleagues in the majority, the question of “joint infringement” liability under § 271(a) is essential to the resolution of these appeals. Divorcing liability under § 271(a) from liability under § 271(b) is unsupported by the statute, subverts the statutory scheme, and ignores binding Supreme Court precedent.
1. The Statutory Scheme
Patent infringement is not a creation of common law. It is a statutorily-defined tort. See 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1379 (Fed.Cir.1998) (“[T]he tort of infringement ... exists solely by virtue of federal statute.”); N. Am. Philips Corp. v. Am. Vending Sales, Inc., 35 F.3d 1576, 1579 (Fed.Cir.1994). “Defining the contours of the tort of infringement ... [thus] entails the construction of the federal statute.” 3D Sys., 160 F.3d at 1379.
35 U.S.C. § 271(a) provides that:
Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.
Section 271(a) defines infringement. H.R.Rep. No. 82-1923, at 9 (1952) (“Section 271, paragraph (a), is a declaration of what constitutes infringement.”) (emphasis added). 35 U.S.C. § 271(b) and (c), in turn, codify the doctrines of inducement and contributory infringement respectively:
(b) Whoever actively induces infringement of a patent shall be liable as an infringer.
(c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.
Congress carefully crafted subsections (b) and (c) to expressly define the only ways in which individuals not completing an infringing act under § 271(a) could nevertheless be liable, rejecting myriad other possibilities that existed in the common law at the time, such as, for example, Peerless Equipment Co. v. W.H. Miner, Inc., 93 F.2d 98, 105 (7th Cir.1938) and Solva Waterproof Glue Co. v. Perkins Glue Co., 251 F. 64, 73-74 (7th Cir.1918). In creating § 271(b) and (c), Congress intended to codify “contributory” infringement liability in a limited manner:
The doctrine of contributory infringement has been a part of our law for about 80 years.... Considerable doubt and confusion as to the scope of contributory infringement has resulted from a *1339 number of decisions of the courts in recent years. The purpose of [section 271 ] is to codify in statutory form principles of contributory infringement and at the same time eliminate this doubt and confusion. Paragraph (b) recites in broad terms that one who aids and abets an infringement is likewise an infringer. The principle of contributory infringement is set forth in ... paragraph [ (c) ] which is concerned with the usual situation in which contributory infringement arises. [Paragraph (c) ] is much more restricted than many proponents of contributory infringement believe should be the case.
H.R.Rep. No. 82-1923, at 9 (1952) (emphasis added). While subsections (b) and (c) are not mutually exclusive, they each address a particular type of multi-party conduct.
Reading subsection (b) in light of subsection (a) is a straightforward exercise. Section 271(a) defines infringement, and, in turn, § 271(b) and (c) establish indirect infringement liability for one who “actively induces infringement” or sells a component part “especially adapted for use in an infringement ” (emphases added). A person who practices the entire invention is an infringer, liable under subsection (a); a person who actively induces such practice is an inducer, liable under subsection (b) (“positive articulation”). The negative inference is equally straightforward: A person who does not practice the entire invention is not liable under subsection (a); a person who actively induces such partial practice is not liable under subsection (b) (“negative articulation”). Such has been the consistent reasoning of this court (and of the Supreme Court, see infra) for years. Joy Techs., 6 F.3d at 774 (citing Supreme Court and Federal Circuit precedent).
The majority rejects this reasoning. It is satisfied with the positive articulation but not the negative articulation because the latter means that some claims (e.g., the claims on appeal) are unenforceable in the absence of a direct infringer. The majority attempts to avoid the result of some patentees having technically valid but valueless claims by essentially rewriting subsection (b) :so that it reads: “Whoever actively induces infringement of [or induces two or more separate parties to take actions that, had they been performed by one person, would infringe ] a patent shall be liable as an infringer.”
2. It is Impermissible to Redefine “Infringement” for the Purposes of Establishing Liability Under § 271(b)
To support its tenuous position, the majority impermissibly bends the statute to define direct infringement differently for the purposes of establishing liability under § 271(a) and (b). The majority asserts that “[sjection 271(a) does not define the term ‘infringement.’ Instead, it simply sets forth a type of conduct that qualifies as infringing.” Maj. Op. 1314. Contrary to the majority’s statement, however, both the House and Senate reports from the statute’s adoption confirm that § 271(a) is, in fact, “a declaration of what constitutes infringement in the present statute.” S.Rep. No. 82-1979, at 8 (1952), 1952 U.S.C.C.A.N. 2394, 2402 (emphasis added); accord H.R.Rep. No. 82-1923, at 9 (1952). In Aro, the Supreme Court unequivocally stated the same: “And § 271(a) of the new Patent Code, which defines ‘infringement,’ left in tact the entire body of case law on direct infringement.” 365 U.S. at 342, 81 S.Ct. 599 (emphasis added).
The idea of defining infringement separately in the context of § 271(a) and (b) is simply unsupported by the text itself. See 35 U.S.C. § 271(a) and (b). The majority essentially asserts that the word “infringement” in § 271(b) — and presumptively *1340 § 271(c) as well — can be defined however this court wants without reference to any statutory provision. Such a bold move from settled principles is unsupported and unwarranted. Congress is presumed to have intended the word “infringement” in § 271(b) and (c) to target the same conduct as “infringes” in § 271(a); it is the same word, simply used as a verb in paragraph (a) to define the act. See Taniguchi v. Kan Pac. Saipan, Ltd., — U.S. -, 132 S.Ct. 1997, 2004-05, 182 L.Ed.2d 903 (2012) (“[I]t is a normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.”) (internal quotations omitted); Hall v. United States, — U.S. -, 132 S.Ct. 1882, 1891, 182 L.Ed.2d 840 (2012) (“At bottom, identical words and phrases within the same statute should normally be given the same meaning. ... Absent any indication that Congress intended a conflict between two closely related chapters, we decline to create one.” (internal quotation omitted)). As the Supreme Court has held, when the relevant language “was inserted into [the statutory provisions] at the same time,” as is the case with § 271(a)-(c), “[t]hat maxim is doubly appropriate.” Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224, 232, 127 S.Ct. 2411, 168 L.Ed.2d 112 (2007) (emphasis added). “The interrelationship and close proximity of these provisions of the statute presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.” Comm’r v. Lundy, 516 U.S. 235, 250, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996) (internal quotations omitted).
The limited doctrines of indirect infringement are explicitly premised on an underlying “infringement.” See 35 U.S.C. § 271(a)-(c); Aro, 365 U.S. at 341, 81 S.Ct. 599. The Supreme Court has expressly rejected interpreting the 1952 Act to divorce indirect infringement from direct infringement. In Aro, the Supreme Court unequivocally held: “[I]t is settled that if there is no direct infringement of a patent there can be no contributory infringement.” Aro, 365 U.S. at 341, 81 S.Ct. 599. The majority argues that Aro does not stand for the proposition that “liability for inducement requires that a single party be liable for direct infringement” because the issue in Aro was limited to whether there was any underlying act of direct infringement based on the defense of permissible repair. Maj. Op. 1315-16. The majority’s attempt to distance Aro from this case is unconvincing. There is no indication in the Supreme Court’s statement in Aro that it was intended to have such a limited meaning. The question of whether or not there was liability for an underlying act of direct infringement was squarely at issue in Aro, and the Court held that without “direct infringement under § 271(a),” i.e., liability, there can be no indirect infringement. 365 U.S. at 341, 81 S.Ct. 599 (“[Defendant’s] manufacture and sale [of a component part] with ... knowledge might well constitute contributory infringement under § 271(c), if, but only if, such a replacement by the purchaser himself would in itself constitute a direct infringement under § 271(a).” (emphasis added)). Not being liable under § 271(a) based on the doctrine of permissible repair is indistinguishable from not being liable under § 271(a) based on the fact that no one has made, used, offered for sale, or sold the patented invention, i.e., no one has performed a complete act of direct infringement. In Aro, the Supreme Court meant exactly what it said: “ ‘In a word, if there is no infringement of a patent there can be no contributory infringer,’ ... and ... ‘if the purchaser and user could not be amerced as an infringer certainly one who sold to him ... cannot be amerced for contributing to a non-existent infringe *1341 ment.’ ” Id. (quoting Mercoid I, 320 U.S. at 674, 677, 64 S.Ct. 268). The word “amerced” is directly tied to liability. The Supreme Court was not just talking about underlying conduct, but liability. Unless someone is liable as a direct infringer, no one is liable for indirect infringement.
The majority cites portions of congressional testimony by Giles S. Rich (later “Judge Rich”) to support its interpretation of the statute. But Judge Rich’s testimony is inconclusive and raises as many questions as it answers. First, it is not at all apparent that the statement relied on by the majority at pages 1310-11 of its opinion is actually directed to inducement and not contributory infringement. As the majority itself recognizes, “[p]rior to the 1952 Act, inducement and contributory infringement were both referred to under the rubric of contributory infringement.” Maj. Op. 1309 (citing Giles S. Rich, Infringement Under Section 271, 21 Geo. Wash. L.Rev. 521, 537 (1953)). Moreover, Judge Rich later took a seemingly different position before Congress at the 1951 hearings, stating: “I should state at the outset that wherever there is contributory infringement there is somewhere something called direct infringement, and to that direct infringement someone has contributed. It is a very different thing from a concept like contributory negligence.” Aro, 365 U.S. at 347 n. 1, 81 S.Ct. 599 (quoting Hearings before Subcomm. of House Judiciary Comm. On H.R. 3760, 82d Cong. 151 (1951)).
However the testimony may be read, the Supreme Court has repeatedly admonished that Congressional hearing testimony, not from a member of Congress, is not entitled to any weight or significance in statutory interpretation. See, e.g., Kelly v. Robinson, 479 U.S. 36, 51 n. 13, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (Even when “comments in the hearings ... may suggest that the language bears the interpretation [in question b]ut none of those statements was made by a Member of Congress, nor were they included in the official Senate and House Reports[, w]e decline to accord any significance to these statements.”); McCaughn v. Hershey Chocolate Co., 283 U.S. 488, 493, 51 S.Ct. 510, 75 L.Ed. 1183 (1931) (The same principle applies to “statements ... made to committees of Congress or in discussions on the floor of the Senate by senators who were not in charge of the bill.”). “For reasons which need not be restated, such individual expressions are with out weight in the interpretation of a statute.” McCaughn, 283 U.S. at 494, 51 S.Ct. 510 (citations omitted). With the upmost respect for Judge Rich, his testimony at the Congressional hearings does not and cannot justify extending by judicial fiat the scope of § 271 beyond the words chosen by Congress to reflect its intent.
Under the majority’s approach, if two or more parties independently practice the elements of a claim, an act of “infringement” to support a charge of induced infringement under § 271(b) has occurred. See Maj. Op. 1308-09. The problem with that approach is that there is no statutory basis for concluding that such independent acts constitute infringement and no basis for asserting a cause of action for infringement against any of those independent parties. This runs directly afoul of 35 U.S.C. § 281, which provides that when there is an “infringement,” “[a] patentee shall have remedy by civil action.... ” § 281 (emphasis added). As the majority points out, “[sjection 281 ... was designed to serve as a ‘preamble’ for the sections on remedies and to ensure that an action for infringement (a ‘civil action’) would be triable to a jury.” Maj. Op. 1314 (citing H.R.Rep. No. 82-1923, at 10, 29 (1952) (“[T]he modern term civil action is used, [so] there would be, of course, a right to a jury trial.”)). While the majority looks to *1342 the legislative history as evincing that § 281 does “not declare that any practicing of a patented invention necessarily brought with it the right of the patent owner to recover in a civil action for infringement,” Maj. Op. 1314 (emphasis added), whether there is a recovery or not is beside the point. The fact remains that, under § 281, where patent “infringement” exists, a patentee has a right to plead a cause of action in civil court, i.e., the patentee has a right not to have his claim dismissed under Fed. Rule of Civ. P. 12(b)(6) for “failure to state a claim upon which relief can be granted” (emphasis added).
The Majority’s reliance on Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565, 1567 (Fed.Cir.1983), is misplaced and misleading. First, Fromson merely vacates an incorrect claim construction. Id. at 1571. Contrary to the majority’s reading, there was no holding in Fromson that a party could contributorily infringe a method claim by performing some but not all of the steps thereof. Second, Fromson never identified the claims that were potentially contributorily infringed. As the Majority notes, the case involved both product and process claims. Maj. Op. 1317-18. A product claim is directly infringed by making the product. Thus, the statement in Fromson can be read to relate only to the product claims. Third, in the sentences immediately after the portion quoted by the Majority, the court in Fromson explained that even though some products were not completed by the accused infringer (but by the customer), other products were. Thus, the claim construction issue actually decided in that case did not depend on the resolution of the doctrinal question at issue here. Finally, Fromson contains no doctrinal analysis on this issue. Rather it contains little more than a recitation of hornbook law in explaining the background of the appeal.
Broadening the doctrine of inducement, such that no predicate act of direct infringement is required, is a sweeping change to the nation’s patent policy that is not for this court to make. See Mayo Collaborative Servs. v. Prometheus, — U.S. -, 132 S.Ct. 1289, 1305, 182 L.Ed.2d 321 (2012) (“[W]e must hesitate before departing from established general legal rules lest a new protective rule that seems to suit the needs of one field produce unforeseen results in another. And we must recognize the role of Congress in crafting more finely tailored rules where necessary.”). This is not a case where Congress has given us a statute of unclear meaning and it falls to the court to interpret the statute. This is the opposite case, where the meaning of Congress’s enactments is clear. That a majority of this court dislikes the policy that results from the statute as Congress wrote it is not a valid foundation for the action taken today. See id. (declining to determine “whether, from a policy perspective, increased protection for discoveries of diagnostic laws of nature is desirable”).
3. Congress’s Addition of § 271(e)(2), (f), and (g) Exemplify that Defining Infringement is not the Province of This Court
The majority points to the more recent additions of 35 U.S.C. § 271(e)(2), (f), and (g) as evidence that “the statute uses the term ‘infringement’ in a way that is not limited to the circumstances that give rise to liability under section 271(a).” Maj. Op. 1314. From this, the majority justifies its new definition of “infringement” under § 271(b). Maj. Op. 1308 (defining “infringement” for the purposes of inducement liability as “acts that collectively practice the steps of the patented method”). But these newer additions do not support the majority; indeed they contradict it. Section 271(b) does not define infringement at all. Section 271(a) does. *1343 Aro, 365 U.S. at 342, 81 S.Ct. 599. Section 271(b) was added with knowledge of the definition of infringement in § 271(a). See id.
Congress enacted § 271(e) and (f) in 1984 and § 271(g) in 1987 to satisfy specific policy goals. The fact that § 271(e), (f), and (g) identify acts not falling under § 271(a) that are to be treated as infringement confirms that, when Congress intended to cover acts not encompassed within the traditional definition of infringement, it knew how to create an alternative definition thereof. For example, Congress enacted § 271(e)(2) to create “an act of patent infringement [when a party] submits an ANDA for a drug (1) which is claimed in a valid product patent, or (2) a use of which is claimed in a valid use patent....” H.R.Rep. No. 98-857, at 26 (1984), 1984 U.S.C.C.A.N. 2647, 2678. Section 271(e)(2), is “a highly artificial act of infringement,” Eli Lilly & Co. v. Medtronic, Inc., 496 U.S. 661, 678, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990), which Congress created to satisfy “a very limited and technical purpose that relates only to certain drug applications,” id. at 676, 110 S.Ct. 2683. Similarly, Congress enacted § 271(f) to create “an [act of] infringement [when an entity] supplies] components of a patented invention ... that are to be combined outside the United States.” H.R.Rep. No. 1984 U.S.C.C.A.N. 5827, 5828 (emphasis added). In passing that section, Congress responded to the Supreme Court’s decision in Deepsouth Packing Co. v. Laitram Corp., 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972), interpreting § 271(a) to exclude such extraterritorial acts. This was “a legislative solution to close a loophole in patent law.” H.R.Rep. No. 1984 U.S.C.C.A.N. 5827, 5828 (emphasis added); see also S.Rep. No. 98-663, at 3 (1984) (explaining the policy goal of preventing entities from “circumventing] a patent” by supplying components for assembly abroad). Finally, Congress enacted § 271(g) to create an act of infringement when an entity “without authority imports in the ■ United States or sells or uses within the United States a product which is made by a process patented in the United States.” S.Rep. No. 100-83, at 48 (1987). The House Report explains that “[t]here [wa]s no policy justification for encouraging such overseas production and concurrent violation of United States intellectual property rights. The courts cannot solve this defect. The Congress can. The compelling nature of this policy deficiency has been evident to leaders in both the legislative and executive branches.” H.R.Rep. No. 100-60, at 6 (1987) (emphasis added).
Congress knows how to create alternative forms of infringement. Congress, however, apparently does- not take issue with this court’s interpretation of § 271(a), (b), and (c) in BMC and Muniauction. If it did, Congress recently had the chance to amend the statute in the Leahy-Smith America Invents Act, Pub.L. No. 112-29, 125 Stat. 284 (2011), signed into law on September 16, 2011. The fact that Congress was aware of BMC and Muniauction when it reformed the 1952 Patent Act indicates that Congress did not intend to abrogate the single entity rule for direct infringement, or broaden indirect infringement liability beyond its intentionally limited scope.
4. The Majority’s Analogies to Criminal and Tort Law are Flawed
In an attempt to justify its statutory revision, the majority overstates and improperly analogizes to fundamental principles of criminal and tort law. The majority asserts that 18 U.S.C. § 2 “has been construed to permit the conviction of an accessory who induces or causes a criminal offense even when the principal is found not liable for the unlawful conduct.” Maj. *1344 Op. 1311 (citing Standefer v. United States, 447 U.S. 10, 19, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980)). This proposition is unremarkable, however, as illustrated by Standefer. In Standefer, while the principal was acquitted on the relevant charges in a separate trial, the Supreme Court found that, in the trial at bar, the “petitioner received a fair trial at which the Government ... prov[ed] beyond reasonable doubt that [the principal] violated [the statute] and that petitioner aided and abetted him in that venture.” 447 U.S. at 26, 100 S.Ct. 1999. The Supreme Court held: “In denying preclusive effect to the [principal’s] acquittal [in the previous trial], ... [t]his case does no more than manifest the simple, if discomforting reality that different juries may reach different results under any criminal statute.” Id. at 25, 100 S.Ct. 1999 (internal quotations omitted). In Standefer, the Supreme Court required proof of the underlying statutory violation, the Government met its burden to prove the underlying statutory violation in the case at bar, and thus the case does not stand for the broad proposition that the majority has quoted it for.
Moreover, the Majority’s statutory analogy to 18 U.S.C. § 2 is facially incorrect. Each of the cases upon which the majority relies to assert that “the inducer’s liability does not turn on whether the intermediary is factually guilty or even capable of committing the charged offense,” Maj. Op. 1311, was decided under 18 U.S.C. § 2(b), which imposes liability on a defendant who causes an “act,” which “would be an offense,” to be done through an intermediary (who may be innocent). 18 U.S.C. § 2(b) (“Whoever willfully causes an act to be done which, if directly performed by him or another would be an offense against the United States, is punishable as a principal.”); Maj. Op. 1311 (citing United States v. Tobon-Builes, 706 F.2d 1092, 1099 (11th Cir.1983), United States v. Gleason, 616 F.2d 2, 20 (2d Cir.1979), and United States v. Rapoport, 545 F.2d 802, 806 (2d Cir.1976)). The appropriate analogy, however, is between 35 U.S.C. § 271(b) and 18 U.S.C. § 2(a), not § 2(b). Section 2(a) provides that anyone who “aids, abets, counsels, commands, induces or procures [the] commission [of a crime], is punishable as a principal.” Compare with 35 U.S.C. § 271(b) (“Whoever actively induces infringement of a patent shall be liable as an infringer.”). In United States v. Concepcion, 983 F.2d 369 (2d Cir.1992), the second circuit explained:
The requirements of § 2(a) [Federal criminal aiding and abetting or “inducement”], however, are somewhat different [than § 2(b) ]. Whereas § 2(a) speaks in terms of procuring or aiding and abetting the commission of an “offense,” and hence requires proof that the primary actor had criminal intent, § 2(b) speaks in terms of causing the actor to perform only an “act.”
Id. at 383. When a defendant is charged with aiding and abetting under § 2(a)— unlike for a defendant who is a cause in fact of a “would be” offense under § 2(b)— the guilt of the principal must be proven. Id. at 383-84. “It is hornbook law that a defendant charged with aiding and abetting the commission of a crime by another [under § 2(a) ] cannot be convicted in the absence of proof that the crime was actually committed” (although the principal need not be prosecuted or may have been acquitted by a separate jury in a different trial, been granted immunity from liability, or pleaded to a lesser offense). United States v. Ruffin, 613 F.2d 408, 412-13 (2d Cir.1979) (holding that “the acquittal of [the principal] by the same jury which convicted [the appellant] precludes a finding under 18 U.S.C. § 2(a) that [the appellant] aided and abetted ... the alleged crime”); accord Standefer, 447 U.S. at 25-26, 100 S.Ct. 1999 (1980).
*1345 Like 18 U.S.C. § 2(a), which requires an actual “offense,” 35 U.S.C. § 271(b) requires an actual “infringement.” Congress’s specific addition of subsection (b) to 18 U.S.C. § 2 in 1948 to capture situations that did not qualify as aiding and abetting in the criminal context discredits the majority’s position that we can reach an analogous result in the context of inducement under 35 U.S.C. § 271, absent a similar statutory revision by Congress. See Concepcion, 983 F.2d at 383-84 (explaining that Congress added subsection 2(b) in 1948 to reach situations where the primary actor did not “have ... the ‘essential criminal intent’ ” to “secure a conviction on a theory of aiding and abetting in violation of subsection (a)” (citations omitted)). The majority does not even attempt to explain its reliance on 18 U.S.C. § 2(b) despite the fact that the operative language of 18 U.S.C. § 2(b) — “would be an offense” — is not found in 35 U.S.C. § 271(b). If Congress wished for inducement under 35 U.S.C. § 271(b) to reach the inducement of acts that “would be” an infringement, Congress would have had to use similar language to that in 18 U.S.C. § 2(b), such as it did in 35 U.S.C. § 271(f), which says “would infringe.” The majority’s “liability-free direct infringement to support inducement” theory is, thus, contrary to the “generally recognized” principle that “there can be no conviction for aiding and abetting someone to do an innocent act.” Shuttlesworth v. City of Birmingham, 373 U.S. 262, 265, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963).
Even if 18 U.S.C. § 2(b) “causation” liability could be compared to inducement under 35 U.S.C. § 271(b) — which as explained supra, it cannot — to be liable under § 2(b) the actor must nevertheless cause “prohibited conduct.” Ruffin, 613 F.2d at 413; accord Tobon-Builes, 706 F.2d 1092, 1099 (“[I]t is well established that § 2(b) was designed to impose criminal liability on one who causes an intermediary to commit a criminal act.... ” (emphasis added)); Gleason, 616 F.2d at 20 (“Under 18 U.S.C. § 2(b) a person who causes an innocent party to commit an act which, if done with the requisite intent, would constitute an offense may be found guilty as a principal.... ” (emphasis added)); Rapoport, 545 F.2d at 806 (same). In contrast here, the tort of patent infringement is statutorily defined in § 271(a) as the unauthorized “mak[ing], us[ing], offer[ing] to sell, or selling] any patented invention.” § 271(a) (emphasis added). Practicing less than all elements of a claim is not patent infringement under § 271(a). Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997); Aro, 365 U.S. at 340, 81 S.Ct. 599 (“The patent is for a combination only. Since none of the separate elements of the combination is claimed as the invention, none of them when dealt with separately is protected by the patent monopoly.” (quoting Mercoid I, 320 U.S. at 667, 64 S.Ct. 268)). When a person induces one or more entities to perform acts that do not constitute the statutorily defined act of patent infringement — -i.e., induces some form of partial or “contributory” action — that person does not induce any prohibited conduct under the statute, and thus cannot be said to aid and abet any prohibited conduct. See Shuttlesivorth, 373 U.S. at 265, 83 S.Ct. 1130.
The majority also errs in stating that “liability for inducement of a tort applies even if the person being induced is unaware that his act is injurious and is not liable for that reason.” Maj. Op. 1313 (emphasis added). The majority cites the Restatement of Torts (“1st Restatement”) § 876 cmt. b (1938), but that comment merely states that a defendant may be liable for assisting or encouraging the tortious conduct of another “whether or not the other knows his act to be tortious.” *1346 The premise of the 1st Restatement is that an encouraged person is liable for “tortious conduct.” The 1st Restatement does not suggest that the “encouraged party” would not be liable. See 1st Restatement § 876 cmt. b, illus. 4-5. Nor do the cited cases support the majority’s proposition that inducement can be based upon liability-free acts. In each of these cases, the alleged liability is based on the defendant’s breach of a direct duty to the plaintiffs; the cases are thus direct liability cases— analogous to direct or vicarious liability situations in the patent law context under § 271(a) — and are not dependent upon the commission of a separate statutorily defined tortious act by some innocent or otherwise immune party. Pelster v. Ray, 987 F.2d 514, 523-24 (8th Cir.1993) (rejecting a directed verdict for defendants where defendants allegedly sold the plaintiff a car knowing that the vendor had rolled back the odometer); Hoyt v. Clancey, 180 F.2d 152, 158 (8th Cir.1950) (not reaching liability, but rather remanding because “the court’s ruling on evidence were [sic] unreasonably restrictive”); Learjet Corp. v. Spenlinhauer, 901 F.2d 198, 203 (1st Cir.1990) (plaintiff stated a claim for fraudulent misrepresentation based on defendant’s intentional false misrepresentations to the FAA); Davis v. Louisville Trust Co., 181 F. 10, 20 (6th Cir.1910) (fraudulent misrepresentation based on false representations to a publishing agency “with knowledge ... that their substance would be published to all who might wish to deal with the companies....”); Hawkins v. Upjohn Co., 890 F.Supp. 609, 611 (E.D.Tex.1994) (plaintiff stated a claim for conspiracy to commit fraud based on “defendants’ repeated and concerted efforts to manufacture and withhold evidence regarding the drugs at issue from the Food and Drug Administration”); Graham v. Ellmore, 135 Cal.App. 129, 26 P.2d 696, 697 (1933) (salesman not liable for fraudulent inducement of a real estate transaction where he made a false statement to purchasers which he “believed ... to have been true” based on the landowner’s misrepresentation; and not addressing the liability of the landowner on appeal); Moyer v. Lederer, 50 Ill.App. 94, 94-96 (Ill.App.Ct.1893) (upholding a jury instruction that “if a merchant furnishes to a mercantile agency ... a willfully false statement ... with intent to obtain a standing and credit to which he knows that he is not justly entitled, and thus to defraud whoever may refer to the agency, ... his liability to any party defrauded by these means is the same as if he had made the false representation directly to the party injured ” (emphasis added)); Kuehl v. Parmenter, 195 Iowa 497, 192 N.W. 429, 431 (1923) (affirming a directed verdict for defendants in a fraud case in which the plaintiff failed to prove damages); Laun v. Union Elec. Co. of Mo., 350 Mo. 572, 583, 166 S.W.2d 1065 (1943) (“The perjured witness and the one who suborns him are joint tortfeasors, acting in conspiracy or combination to injure the party defamed. The fact that one of them is protected from a civil suit by a personal privilege does not exempt the other joint tortfeasor from such suit.” (quotation omitted)); Midford v. Kann, 32 A.D. 228, 52 N.Y.S. 995 (1989) (upholding a trial judge’s charge of false imprisonment against defendant where the defendant caused police officers to illegally arrest the plaintiffs on his property; and not addressing the officers’ liability). As shown, in each cited case, although intermediate actors may have directly caused an injury, the party held liable also was held to have directly caused an injury.
The 1st Restatement only provides for inducement liability in the presence of an underlying wrongful or “tortious” act or “breach of duty.” 1st Restatement § 876; see also Maj. Op. 1313. The “tortious conduct” or “breach of duty” in this case is *1347 the act statutorily defined, in § 271(a). There is no tort for inducing an act that is something less than an infringement, and thus not itself wrongful, tortious, or a breach of duty. See First Restatement § 876.
B. The Single Entity Rule for Direct Infringement Liability under § 271(a)
Direct infringement liability requires that one actor performs each and every element or step of a claim. See Aro, 365 U.S. at 340, 81 S.Ct. 599 (“The patent is for a combination only. Since none of the separate elements of the combination is claimed as the invention, none of them when dealt with separately is protected by the patent monopoly.” (quoting Mercoid I, 320 U.S. at 667, 64 S.Ct. 268)). Unlike indirect infringement under § 271(b) and (c), which both require a certain mens rea, Global-Tech Appliances, Inc. v. SEB S.A., — U.S. -, 131 S.Ct. 2060, 2068, 179 L.Ed.2d 1167 (2011), under § 271(a), direct infringement is a strict-liability offense, id. at 2065 n. 2 (“Direct infringement has long been understood to require no more than the unauthorized use of a patented invention .... [A] direct infringer’s knowledge or intent is irrelevant.” (emphasis added)). Because of the strict-liability nature of direct infringement, this court has limited direct infringement liability “to those who practice each and every element of the claimed invention,” BMC, 498 F.3d at 1381, i.e., the “single entity rule.” See Cross Med. Prods, v. Medtronic Sofamor Danek, 424 F.3d 1293, 1311-12 (Fed.Cir.2005) (applying the single entity rule). The single entity rule, consistent with the statute, protects an actor who practices less than all elements of a claim — i.e., does not practice the “patented invention” — from direct patent infringement liability.
The legislative history supports the single entity rule for direct infringement. Congress enacted § 271 to clarify the scope of indirect infringement, and in so doing, “left in tact the entire body of case law on direct infringement.” Aro, 365 U.S. at 342, 81 S.Ct. 599. When the Supreme Court held in Aro that § 271(a) did not change the law of direct infringement, the Court was referring to the single entity, all elements rule of direct infringement that was “well settled” in 1952. See Wallace v. Holmes, 29 F. Cas. 74, 80 (C.C.D.Conn.1871) (“The rule of law invoked by the defendants is this — that, where a patent is for a combination merely, it is not infringed by one who uses one or more of the parts, but not all, to produce the same results.... This rule is well settled, and is not questioned on this trial.” (emphasis added)).
Today, just as in 1952, where a single entity does not perform each and every claim limitation, that entity may not be characterized as or held liable as a direct infringer. See Aro, 365 U.S. at 340, 81 S.Ct. 599; Cross Med., 424 F.3d at 1311-14 (Fed.Cir.2005) (holding that there can be no direct infringement of a product claim where surgeons, and not the defendant, made the claimed apparatus in the operating room, and remanding to determine whether the surgeons directly infringed such that Medtronic could be held liable for indirect infringement). Contributory actions — such as the performance of some, but not all, steps of a method claim — do not meet the all elements test, and thus must be analyzed exclusively under the doctrines of indirect infringement. BMC, 498 F.3d at 1381 (“[Expanding the rules governing direct infringement to reach independent conduct of multiple actors would subvert the statutory scheme for indirect infringement.”).
Limelight and many amici argue that the word “whoever” in § 271(a) (“whoever ... uses ... any patented invention”) undermines the single entity rule. See 1 *1348 U.S.C. § 1 (“In determining the meaning of any Act of Congress, unless the context indicates otherwise — words importing the singular include and apply to several persons, parties, or things.... ” (emphasis added)). This argument fails for two reasons. First, if one interprets “whoever” to include the plural, the statute simply states the obvious: More than one entity can be independently liable for direct patent infringement if each entity practices every element of the claim. Second, the statutory context, with § 271(b) and (c) extending liability to actors who do not independently infringe in limited, specifically defined circumstances, indicates that § 271(a) excludes joint liability. See City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 445, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002) (“It is a well-established principle of statutory construction (and of common sense) that when ... ‘two words or expressions are coupled together, one of which generally includes the other, it is obvious that the more general term is used in a meaning excluding the specific one.”’) (quoting J. Sutherland, Statutes and Statutory Construction § 266 p. 349 (1891)).
C. Traditional Principles of Vicarious Liability Still Apply to § 271(a)
Our “divided infringement” case law is rooted in traditional principles of vicarious liability. BMC held that, where the actions of one party can be legally imputed to another such that a single entity can be said to have performed each and every element of the claim, that single entity is liable as a direct infringer. 498 F.3d at 1380-81. Before BMC, the judiciary and the patent law community generally recognized that multiple actors could together infringe a patent only if one somehow controlled the other(s). See Mobil Oil Corp. v. Filtrol Corp., 501 F.2d 282, 291-92 (9th Cir.1974) (“Mobil contends that Filtrol and Texaco split between them the performance of the four steps of the claim.... We question whether a method claim can be infringed when two separate entities perform different operations and neither has control of the other’s activities. No case in point has been cited.” (emphasis added)); Mark Lemley et al., Divided Infringement Claims, 33 AIPLA Q.J. 255, 258 (2005) (“[C]ourts have imposed liability for direct infringement where another person acts as an agent of the alleged infringer.” (emphasis added)). Applying traditional principles of vicarious liability to direct infringement under § 271(a) protects patentees from a situation where a party attempts to “avoid infringement ... simply by contracting out steps of a patented process to another entity.... It would be unfair indeed for the mastermind in such situations to escape liability.” BMC, 498 F.3d at 1381.
BMC’s holding that direct infringement liability under § 271(a) — in the context of joint actors — exists only where one party was shown to “control or direct each step of the patented process,” 498 F.3d at 1380, is properly rooted in the doctrine of vicarious liability. See also Muniauction, 532 F.3d at 1329. Both tort and agency law guide BMC’s test. See Restatement (Second) of Torts § 877 (1979) (“For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... orders or induces the conduct ..., [or] controls, or has a duty to use care to control, the conduct of the other ... and fails to exercise care in the control.... ” (emphases added)); Restatement (Third) of Agency § 1.01 (2006) (“Agency is the fiduciary relationship that arises when one person (a ‘principal’) manifests assent to another person (an ‘agent’) that the agent shall act on the principal’s behalf and subject to the principal’s control, and the agent manifests assent or otherwise consents so to act.”); Restatement (Second) of Torts § 315 (1965) *1349 (“There is no duty so to control to the conduct of a third person as to prevent him from causing physical harm to another unless ... a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person’s conduct....” (emphasis added)).
The vicarious liability test also reaches joint enterprises acting together to infringe a patent. The acts of each participant in a joint enterprise are, by definition, imputed to every member.
All members of a joint venture may be jointly and severally liable to third persons for -wrongful acts committed in furtherance of the joint enterprise. Thus, the negligence of one participant in the enterprise or venture, while acting within the scope of agency created by the enterprise, may be imputed to another participant so as to render the latter liable for the injuries sustained by third persons as a result of the negligence.
48A C.J.S. Joint Ventures § 60; see also Restatement (Second) of Torts § 491 (1965) (“Any one of several persons engaged in a joint enterprise, such as to make each member of the group responsible for physical harm to other persons caused by the negligence of any member, is barred from recovery against such other persons by the negligence of any member of the group.”).
A joint enterprise exists for the purposes of imposing vicarious liability when there is:
(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. Whether these elements exist is frequently a question for the jury, under proper direction from the court.
Restatement (Second) Torts § 491 cmt. c.; see also 57B Am.Jur.2d Negligence § 1138. In Golden Hour Data Sys., Inc. v. emsCharts, Inc., 614 F.3d 1367 (Fed.Cir.2010), this court, relying on BMC and Muniauction, affirmed the district court’s grant of JMOL that there could be no direct infringement because there was insufficient evidence of direction or control, id. at 1380-81, even though the two accused entities “formed a strategic partnership, enabled their programs to work together, and collaborated to sell the two programs as a unit,” id. at 1371. Because the parties in that case would have satisfied the test for joint enterprise based on common purpose and an equal right of mutual control, see id., the en banc court should expressly overrule the holding in that case. This case, as well as the other “joint infringement” cases decided under § 271(a), however, cannot be addressed under the majority’s analysis, which purports to limit itself to § 271(b).
The well established doctrine of vicarious liability is the proper test for establishing direct infringement liability in the multi-actor context. Absent direct infringement, the patentee has not suffered a compensable harm. See, e.g., BMC, 498 F.3d at 1379. In patent law, unlike in other areas of tort law — where the victim has no ability to define the injurious conduct upfront — the patentee specifically defines the boundaries of his or her exclusive rights in the claims appended to the patent and provides notice thereby to the public to permit avoidance of infringement. As this court correctly recognized in BMC, “[t]he concerns over a party avoiding infringement by arms-length cooperation can usually be offset by proper claim drafting. A patentee can usually structure a claim to capture infringement by single party.” 498 F.3d at 1381. As many amici have *1350 pointed out, the claim drafter is the least cost avoider of the problem of unenforceable patents due to joint infringement, and this court is unwise to overrule decades of precedent in an attempt to enforce poorly-drafted patents.
Accordingly, I would hold that direct infringement is required to support infringement under § 271(b) or § 271(c) and properly exists only where one party performs each and every claim limitation or is vicariously liable for the acts of others in completing any steps of a method claim, such as when one party directs or controls another in a principal-agent relationship or like contractual relationship, or participates in a joint enterprise to practice each and every limitation of the claim.
D. Judge Newman’s Dissent Errs by Resuscitating the Common Law of Joint Tortfeasor
Judge Newman’s opinion, which would permit joint actor infringement liability whenever independent parties collectively infringe a patent, is no more satisfactory as a matter of either statutory interpretation or legal analysis. Judge Newman attempts to justify this loose approach to direct infringement liability under § 271(a) by asserting that § 271(a) is not a strict liability provision after all, with the apparent consequence that innocent participants are in fact not liable. This assertion is fallacious. In Global-Tech, the Supreme Court held that “[djirect infringement has long been understood to require no more than the unauthorized use of a patented invention.... [A] direct infringer’s knowledge or intent is irrelevant.” 131 S.Ct. at 2065 n. 2 (emphasis added). The fact that the statutory tort of infringement has no mental state requirement, actual or constructive, by definition, renders it a strict liability offense. See Black’s Law Dictionary 998 (9th ed.2009) (defining “strict liability” as “[ljiability that does not depend on actual negligence or intent to harm, but that is based on the breach of an absolute duty to make something safe”); XVI Oxford English Dictionary 899 (2d ed.1989) (defining “strict liability” as “a liability which does not depend upon intent to commit an offence”). Judge Newman’s reliance on § 287’s notice provisions for damages as evidence of a requisite mental state conflates preconditions of suit with elements of the tort, treating the marking requirement as tantamount to a “knew or should have known” element of infringement proper.
Judge Newman’s joint actor liability approach under § 271(a) would also disrupt well-settled law with respect to system and apparatus claims by permitting multi-party infringement liability in the context of an apparatus or system claim — an absurd and unworkable result. For example, if a patentee, P, has an apparatus claim to a new and improved machine; and parties N, B, and G are manufactures who make the nuts, bolts, and gears that comprise the machine; and N, B, and G sell to party A, who assembles and sells or uses the machine; under Judge Newman’s test, all are now joint infringers of P’s patent. Under such an approach, the need for contributory infringement and inducement, as Congress envisioned, is essentially eviscerated.
III. Application to the Cases on Appeal
A. Akamai
In the Akamai case, the asserted claims were drafted so as to require the activities of both Limelight and its customers for a finding of infringement. Thus, Akamai put itself in a position of having to show that the allegedly infringing activities of Limelight’s customers were attributable to Limelight. Akamai did not meet this burden because it did not show that Limelight’s customers were acting as agents of or otherwise contractually obligated to Limelight or that they were acting in a *1351 joint enterprise when performing the tagging and serving steps. Accordingly, I would affirm the district court’s grant of Limelight’s motion for JMOL of non-infringement under § 271(a).
I would also reinstate the portion of the panel’s opinion addressing Limelight’s alternative ground for affirmance and conditional cross-appeal of the damages award, as well as the portion dealing with the '645 and '413 Patents.
B. McKesson
In the McKesson case, the doctor-client relationships of the MyChart health care providers and their patients do not by themselves give rise to an agency relationship or impose on patients a contractual obligation such that the voluntary actions of the patients can be said to represent the vicarious actions of their doctors. Nor is there anything to indicate that the MyChart health care providers act in any joint enterprise with their patients. Accordingly, I would affirm the district court’s grant of Epic’s renewed motion for summary judgment of noninfringement.